**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**PATRICIA ROSS,**

      **Plaintiff,**

**v.**                                                                                     **Case No.  8:06-cv-1655-T-17TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.[2]  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-one years of age at the time of her administrative hearing in August 2004.  She has an associate's degree in applied science and respiratory therapy.  Her

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007.

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  See also M.D. Fla. R. 6.01(c)(21).

past relevant work was as a respiratory therapist, school bus driver, office clerk, office manager, dispatcher, and receptionist. Plaintiff applied for disability benefits and Supplemental Security Income payments in August 2002, alleging disability as of May 1, 1996,[3] by reason of spinal stenosis, degenerative disc disease, and bipolar disorder. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she could no longer work due to pain in the back, hip, and legs and her inability to get along with people. By Plaintiff's account, she was fired from her last job as a school bus driver because she was unable to deal with other people, her back "was going out a lot," she had bursitis in both hips, and she had a lot of pain in her lower back, hip, and left leg. Upon the advice of a doctor, she has been using a cane to help keep the weight off of her left leg. Plaintiff has also been advised that an operation on her back would only make things worse. She has tried a pain patch and epidurals for the pain. The injections only helped for about a week. The patches did not stay on or help much. Plaintiff takes prescription medication, Bextra. Plaintiff also suffers from mental impairments and has been diagnosed as bipolar. According to Plaintiff, she has always had difficulty getting along with people and she is anti-social, intolerant of people, and has trouble concentrating and remembering. At the time of the hearing, she was seeing a counselor and a psychologist every month.

---

[3]The alleged onset date was amended to August 11, 2000, at the administrative hearing. (R. 415).

2

Plaintiff testified to limited daily activities. According to Plaintiff, she can stand or walk for about ten minutes before she gets spasms and her back goes out. It took her fifteen minutes to get from the parking lot to the building for the hearing. She gets short of breath because she suffers from asthma. She can sit for about ten minutes before she has to change positions. When she experiences pain, she goes and lies down in her bed. She spends most of her time in bed. She sleeps a lot during the day and at night, but her pain wakes her up at night and she has to change positions. Plaintiff thinks constantly about her pain. Now and then she has trouble with remembering what she said or did. She recently gave custody of her four children to relatives because she was unable to care for them due to her mental and physical problems. Plaintiff has a doctor complete a form every three months indicating she is unable to work so that she can receive food stamps. See Plaintiff's testimony (R. 414-26).

Teresa Manning, a vocational expert ("VE"), testified upon an assumption of a person of Plaintiff's age, education and work experience, capable of sedentary to light exertional work with a sit/stand option and an occasional limitation for bending, stooping, crouching, kneeling, and prolonged standing, and capable of routine tasks in a limited stress environment that allows for occasional lapses in concentration. On this assumption, the VE opined that such person could do Plaintiff's past relevant work as a receptionist and office clerk. She opined further that such a person could also perform light exertional work as a file clerk, mail clerk and copy machine operator and sedentary exertional work as a ticket checker, information clerk, and proofreader. Upon questioning by Plaintiff's attorney, the VE clarified that all of the jobs she identified permitted a sit/stand option at will and

accommodated occasional lapses in concentration by not requiring quotas or the performance of work within strict time frames.  See VE's testimony (R. 427-30).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set out herein as necessary.

By his decision of July 29, 2005, the ALJ determined that while Plaintiff has severe impairments related to chronic back pain, bipolar disorder, and mild carpal tunnel syndrome, she nonetheless had the residual functional capacity to perform a restricted range of sedentary and light exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a receptionist and office clerk, as well as other work available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 21-33).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are

4

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises four claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ's residual functional capacity ("RFC") assessment regarding Plaintiff's exertional limitations, which formed the basis of the ALJ's hypothetical to the VE at the hearing as well as the findings at steps 4 and 5 in the sequential evaluation, contains contradictory findings and is contrary to law because it relies on definitions of limitations that are in conflict with the Regulations;

(2) Based on the required regulatory criteria and definitions, none of the jobs referenced in the decision would allow for the "alternate sitting and standing" option; and, all but one of them would not allow for a limitation to "simple repetitive tasks;"

(3) The ALJ failed to consider Plaintiff's well documented obesity as a severe impairment that would limit her ability to stand, walk, and sit on a continuous basis; and

(4) The ALJ failed to consider evidence that would increase the severity of Plaintiff's psychiatric limitations.

By her first claim, Plaintiff takes issue with the ALJ's physical residual functional capacity ("RFC") determination that she could perform "sedentary to light work with a

6

sit/stand option" and with an occasional limitation for prolonged standing and certain postural activities. By Plaintiff's argument, the ALJ should have defined the parameters of the sit/stand option because, as his RFC determination stands, it renders her unable to perform the prolonged sitting required by sedentary work[4] and the prolonged standing required for light work.[5] As such, Plaintiff urges she is prohibited from performing a full range of either type work. Plaintiff also argues that an occasional limitation for prolonged standing precludes her from performing light work at all because light work requires "a good deal of standing or walking" and "occasionally" means up to one-third of the workday or about two and a half hours. As a result, Plaintiff urges she may (at most) have the RFC for a limited range of sedentary work with a sit/stand option. Plaintiff further complains that the ALJ failed to employ the function-by-function assessment required by SSR 96-8p because he did not address the length of time that she can sit, stand, or walk; how long and with what frequency

---

[4]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Kelley v. Apfel, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

[5]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b). The full range of light work requires standing or walking, off an on, for a total of approximately six hours of an eight-hour workday, and sitting may occur intermittently during the remaining time. SSR 83-10, 1983 WL 31251, *6 (S.S.A.).

is she required change positions; and how much weight she is able to lift and/or carry. Thus, Plaintiff urges that the RFC is incomplete and the ALJ's finding that she can return to her past work or other work is rendered useless. (Doc. 20 at 2-8).

The Commissioner counters that the ALJ performed a function-by-function assessment in determining Plaintiff's RFC and his finding that she required a sit/stand option at will was sufficiently specific. In any event, the Commissioner urges that any error committed by the ALJ in this regard is harmless. (Doc. 21 at 6-8).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Lewis, 125 f.3d at 1440. In assessing a claimant's functional capacity, SSR 96-8p directs that an ALJ must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.[6] SSR 96-8p, 1996 WL 374184, *1 (S.S.R.). The phrase "on a function-by-function basis" refers to the "functions" identified in the regulations. See id. These include physical abilities (sitting, standing, walking, lifting, carrying, pushing, pulling, etc.), mental abilities (understanding, remembering, and carrying out instructions and responding appropriately to supervision, co-workers and work pressures), and other abilities affected by impairments, such as skin impairments, epilepsy, and hearing or visions impairments. See 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).

---

[6]The Social Security Administration's rulings are not binding on this court, however, they are accorded deference. See Fair v. Shalala, 37 F.3d 1466, 1469 (11th Cir. 1994); B.B. ex. rel. A. L. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981).

Here, after reviewing the medical evidence and considering Plaintiff's testimony, the ALJ found that Plaintiff's chronic back pain, bipolar disorder, and mild carpal tunnel syndrome resulted in significant vocationally relevant limitations. He determined that Plaintiff retained the functional capacity to perform *"sedentary and light work with a sit/stand option with an occasional limitation for bending, stooping, crouching, kneeling, and prolonged standing,"* and was capable of performing *"only simple, repetitive tasks in an environment with limited work stress and an environment that allows for occasional lapses in concentration."* (R. 30). Relying on VE testimony, the ALJ then made alternative findings at steps four and five of the sequential evaluation.[7] At step four, the ALJ concluded that Plaintiff was capable of returning to her past relevant work as an office clerk and receptionist as those jobs were previously performed and as they are generally performed in the national economy. Id. at 30-31. In the alternative, the ALJ concluded at step five that Plaintiff retained the functional capacity to perform other jobs that existed in significant numbers in the national economy as a file clerk, mail clerk, copy machine operator, ticket checker, information clerk, and proof reader. Id. at 31.

Upon careful consideration, I conclude that Plaintiff is not entitled to relief on this claim. First, I disagree with Plaintiff's assertion that the ALJ's RFC assessment is

---

[7]The VE first testified that she was familiar with the regulatory definitions of unskilled, semi-skilled, sedentary, light, medium, heavy, and very heavy. (R. 427-28). Thereafter, the ALJ presented a hypothetical question to the VE that included the same RFC as above, except instead of "simple, repetitive tasks," the ALJ indicated "routine tasks." Id. at 428-29. In response, the VE testified that Plaintiff could perform her past work as an office clerk and receptionist, as well as other jobs existing in the national economy. Id. at 429. The VE also testified that the jobs allowed for a sit/stand option at will (as opposed to a specific time frame for sitting and standing) and occasional lapses in concentration. Id. at 430. The ALJ accepted the VE's testimony, noting that it was not inconsistent with information provided in the Dictionary of Occupational Titles ("DOT"). (R. 31).

contradictory, incomplete, and invalid because he did not clarify to what extent she required a sit/stand option. In fact, the ALJ did. As set forth in the decision and conceded by Plaintiff, the ALJ found that she had to be able to sit and/or stand *at will*. The VE's testimony encompassed that limitation. While such a restriction would clearly limit the range of light and sedentary work Plaintiff could perform, the ALJ, employing a VE, identified four jobs in each exertional category that she could perform given that limitation. Plaintiff concedes that even with this limitation (and the limitation for only occasional prolonged standing), she could perform a limited range of sedentary work. See (Doc. 20 at 5). Given the restrictions set forth in the ALJ's RFC determination and the VE's testimony, four of the jobs identified by the VE (receptionist, ticket checker, information clerk, and proofreader) would appear supported by substantial evidence. See (R. 428-29).[8] Furthermore, I find nothing inconsistent with the ALJ's RFC determination and SSR 83-12.[9] Rather, the ALJ complied with the dictates of the ruling by obtaining VE testimony.

---

[8] The limitation for occasional prolonged standing, without additional explanation from the ALJ, does raise concerns with his conclusion concerning Plaintiff's capacity for light work. However, given the findings related to sedentary work, any error in this regard is harmless.

[9] SSR 83-12 clarifies policies applicable in using the grid rules as a framework for adjudicating claims in which an individual has only exertional limitations and no specific rule applies because the individual's RFC does not coincide with any of the defined exertional ranges of work. SSR 83-12, 1983 WL 31253, *1 (S.S.A.). The ruling recognizes that in some cases, the medical facts lead to an assessment of RFC that is compatible with either sedentary or light work except that the person must alternate between periods of sitting and standing. Id. at *4. As Plaintiff notes, the ruling also states that an individual requiring a sit/stand option is unable to perform the prolonged sitting contemplated in the definition of light work or the prolonged standing or walking contemplated for most light work, and that unskilled work typically does not accommodate sitting and standing at will. See id. However, in situations such as those, adjudicators are directed to consult a VE to clarify the implications for the occupational base. Id. Here, the ALJ did just that.

I also disagree with Plaintiff that the ALJ failed to perform a "function-by-function" assessment, at least in regards to her capacity for sedentary work. While the ALJ could have better articulated this assessment, a fair reading of the decision reveals such assessment was performed upon a review of the medical and mental health records and in light of the Plaintiff's express claims of limitations. The resultant RFC was a fair assessment of both and reflects the function by function assessment, particularly with regard to Plaintiff's ability to sit and stand.[10] Even if Plaintiff's was correct, on this record, I find that any error committed by the ALJ with respect to a function-by-function analysis is harmless as it relates to his RFC finding for sedentary work. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61.

By her second claim, Plaintiff argues that the jobs identified by the VE (two of her past jobs plus six additional jobs) do not allow for a sit/stand option and only one of the jobs allows for a limitation for simple, repetitive tasks. According to Plaintiff, no jobs in the DOT allow for a sit/stand option (or a sit/stand option at will), the VE's testimony was therefore inconsistent with the DOT, and the ALJ erred under SSR 00-4p by not asking the VE to

---

[10] In this case, the reports and opinions of Plaintiff's treating doctors clearly undermine her claims of disabling limitations, particularly in relation to her physical functioning. Significantly, Plaintiff does not here allege that the ALJ's RFC determination was not supported by substantial evidence. On this appeal, she fails to she adequately demonstrate her claim that the ALJ did not perform the required function-by-function assessment in reaching this RFC.

11

explain the conflict with the DOT.[11]  Plaintiff also argues that the limitation for simple, repetitive tasks equates to the DOT reasoning level 1 or 2 and all but one of the jobs identified by the VE require reasoning levels of 3 or above.[12]  When the above limitations are properly considered, Plaintiff urges that none of the jobs referenced by the VE allow for a sit/stand option at will <u>and</u> simple, repetitive tasks (i.e., reasoning level 1 or 2).  Plaintiff also suggests that jobs allowing for occasional limitations in concentration do not exist.[13]  In sum, Plaintiff urges that the ALJ's reliance on the VE's testimony is not supported by substantial evidence and a remand is required.  (Doc. 20 at 8-19).

The Commissioner counters that the VE's testimony adequately refutes Plaintiff's argument that the DOT does not contain any jobs that allow for a sit/stand option.  Similarly, the Commissioner urges that the VE's testimony adequately refutes Plaintiff's other argument.  According to the Commissioner, the fact that Plaintiff performed two of the jobs in the past establishes that she had the reasoning level needed to perform at least her past work, which alone provides substantial evidence for the ALJ's decision.  He also notes that a

---

[11]Plaintiff also urges that her testimony that she cannot sit or stand continuously for more than ten minutes at a time should have been included in the RFC and hypothetical question.  (Doc. 20 at 11).  Plaintiff, however, does not challenge the ALJ's credibility determination.  In any event, her testimony is not necessarily inconsistent with the sit/stand option at will.

[12]The DOT specifies the general educational development ("GED") including the level of reasoning skills required for each job. Each job is given a level of 1 to 6, with 1 being the lowest level and 6 being the highest level.

[13]Because "occasional" roughly translates to up to 2.5 hours a day, <u>see</u> SSR 83-10, 1983 WL 31251, *5, Plaintiff urges that the concentration limitation would render it impossible to perform sustained work.

12

finding that the DOT definition trailers, particularly the standards of GED, are binding on the ALJ would lead to absurd results. (Doc. 21 at 8-10).

A review of the transcript reveals that neither the ALJ nor Plaintiff's counsel made any inquiry of the VE concerning any inconsistency between her testimony and the DOT. Under SSR 00-4p, an ALJ is required to identify and obtain a reasonable explanation for any conflicts between a VE's testimony and information in the DOT before relying on the VE testimony to support a decision. Further, it directs that the ALJ explain how any identified conflicts were resolved. SSR 00-4p, 2000 WL 628049 (S.S.A.). As indicated previously, in this circuit, such rulings are entitled to deference by the court. See Fair, 37 F.3d 1469. However, in this circuit an ALJ is also free to rely upon the VE's testimony, even if it is inconsistent with the DOT, and, contrary to SSR 00-4p, the testimony of a VE trumps the DOT.[14] See Miller v. Comm'r of Soc. Sec., No. 07-11364, 2007 WL 2461771, *1-2 (11th Cir. 2007) (unpublished);[15] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The

---

[14]Additionally, I do not necessarily agree that the VE's testimony (that the jobs identified could encompass a sit/stand) was inconsistent with the DOT or contrary to Social Security Administration policy  The DOT does not address sit/stand options. Furthermore, while Plaintiff relies on SSR 83-12, she ignores that it directs an ALJ to obtain VE testimony when such a restriction is indicated. The ALJ in this case did exactly that. Regarding the limitation of simple, repetitive work, the parties have filed additional pleadings. Plaintiff submitted a notice of supplemental authority with additional argument (Doc. 22), the Commissioner filed a response (Doc. 23), and Plaintiff responded to the response (Doc. 24). Since those filings, the Eleventh Circuit issued its opinion in Miller v. Comm'r of Social Sec., No. 07-11364, 2007 WL 2461771 (11th Cir. 2007). In that decision, the Eleventh Circuit reaffirmed its prior holding that the testimony of a VE trumps an inconsistent provision of the DOT and held that, even assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err when he relied on the VE's testimony without first resolving the alleged conflict. Id. at *2. In light of this decision, the supplemental filings need not be addressed.

[15]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

rationale for this approach is derived from a reading of both the DOT and the regulations that advise that the DOT is not the exclusive source of information concerning jobs. By my consideration, while the ALJ was obliged to make this inquiry under the applicable ruling, the failure to do so does not necessarily require a remand and I am unpersuaded by Plaintiff's argument that remand would serve a useful purpose. See Diorio, 721 F.2d at 728; Mays, 837 F.2d at 1364; Fed. R. Civ. P. 61. I am unwilling to assume and otherwise conclude on this record that the VE did not fully comprehend the Plaintiff's limitations or fairly consider them in light of the job requirements for the jobs she identified as available to the Plaintiff. Plaintiff provides no demonstration to the contrary and I conclude she is not entitled to relief on this claim.

By her third claim, Plaintiff faults the ALJ for failing to find that her weight/obesity constituted a severe a impairment and consider its impact when determining her ability to stand, walk, and sit on a continuous basis.[16] (Doc. 20 at 19-20). The Commissioner responds that the record supports the ALJ's finding that Plaintiff's obesity was not a severe impairment. He also notes that Plaintiff did not allege problems resulting from her obesity; rather, her counsel simply listed her weight and BMI and alleged possible limitations that might result from obesity. (Doc. 21 at 11-12).

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic

---

[16]Plaintiff is 5'5" and has weighed between 200 and 228 pounds.

14

work activities, then she is not disabled.[17] In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Id. A "[c]laimant need show only that her impairment is not so slight and its effect not so minimal." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, the ALJ found at step two of the sequential analysis that Plaintiff's chronic back pain, bipolar disorder, and mild carpal tunnel syndrome were "severe" impairments under the Act. (R. 32). This finding is in accordance with controlling authority and does not require remand. See, e.g., Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). Thus, the ALJ's failure to find that Plaintiff's obesity was a severe impairment at step two does not, alone, raise a significant issue. Moreover, as the Commissioner points out, Plaintiff did not allege disability due to obesity and the issue appears raised for the first time on this appeal. More importantly, Plaintiff does not allege or otherwise demonstrate any functional

---

[17]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." Bowen v. Yuckert, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. Id.

15

restrictions resulting from her weight and her doctors did not identify or comment on any obesity-related restrictions.  In short, Plaintiff fails to demonstrate that her obesity has any impact on her functional capacity beyond the limitations assessed by the ALJ.  See SSR 02-1p, 2002 WL 628049, *6 (S.S.A.) (recognizing that obesity may or may not increase the severity or functional limitations of other impairments and evaluation will be made on information in the case record).

By her last claim, Plaintiff faults the ALJ for failing "to consider evidence that would increase the severity of Plaintiff's psychiatric limitations" and to inquire into the reasons why Plaintiff relinquished custody of her children and was hospitalized in 2003.  According to Plaintiff, a proper assessment of her "psychiatric pathology" was not performed. (Doc. 20 at 20).  The Commissioner responds that Plaintiff's argument is confusing because the ALJ found that Plaintiff had a severe mental impairment and assessed corresponding mental limitations.  He notes that Plaintiff's contention is not wholly accurate because the ALJ questioned Plaintiff at the hearing about relinquishing custody of her children.  Further, Plaintiff testified about her bipolar disorder but did not allege particular limitations stemming from it.  The Commissioner also argues that to the extent Plaintiff suggests the ALJ should have addressed more limitations stemming from her mental impairment, she fails to allege exactly how she is more limited than found by the ALJ.  (Doc. 21 at 12-14).

Review of the decision and the hearing transcript refute Plaintiff's contentions. Contrary to Plaintiff's assertions, the ALJ fairly considered and recounted the evidence of record pertaining to Plaintiff's mental impairment(s).  (R. 25-26, 28-29).  This includes the treatment records from a psychiatric hospital that Plaintiff points to here.  (R. 25).  The ALJ

also recounted her testimony from the administrative hearing pertaining to the fact that she relinquished custody of her children. (R. 27). Furthermore, the ALJ expressed his apparent concern about Plaintiff's mental impairments and ordered a consultative evaluation that was scheduled post-hearing. (R. 405-10, 413). Thus, to the extent Plaintiff urges that her "extreme psychiatric pathology" was not properly evaluated, I respectfully disagree. It is also worth noting that Plaintiff does not specifically challenge the ALJ's mental RFC assessment or allege certain mental restrictions that the ALJ should have considered but did not. Under these circumstances, I can find no reversible error.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
14th day of September 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved

17

party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record